523 A.2d 1033

**Neil Edgar BEACHEM**

v.

**STATE of Maryland.**

**No. 993, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 14, 1987.

Certiorari Denied Sept. 9, 1987.

---

**6.** There is no dispute regarding the judgment of divorce; hence it is affirmed.

40

Laurie I. Mikva, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and M. Kenneth Long, State's Atty. for Washington County, Hagerstown, on brief), for appellee.

Submitted before GARRITY, ROSALYN B. BELL and ROBERT M. BELL, JJ.

ROSALYN B. BELL, Judge.

The Circuit Court for Washington County declared valid a detainer lodged by the Commonwealth of Virginia against Neil Edgar Beachem, appellant. Beachem contests this ruling contending:

—"[The] detainer should have been dismissed for failure to comply with the time limits set by the Uniform Criminal Extradition Act."

—"The Court below erred in denying [his] motion to dismiss the Virginia detainer on the basis of undue delay by the State of Maryland in determining the detainer's validity."

—"The Court below erred in denying [his] request for a continuance."

—"The Judge should have recused himself from [the] case."

## I. INTERSTATE AGREEMENT ON DETAINERS

In order to understand Beachem's arguments, we first review the relevant portions of the primary statute involved in this appeal. Virginia officials seeking temporary custody of Beachem in order to try him for charges pending in Virginia proceeded under the Interstate Agreement on Detainers (I.A.D.), codified at Md.Code Ann. Art. 27, §§ 616A–616R (1957, 1982 Repl.Vol., 1986 Cum.Supp.). The I.A.D. provides cooperative procedures among the member states for the transfer of prisoners incarcerated in a penal or correctional institution in one state, which we will refer to as the asylum state, to the temporary custody of a second state, which we will refer to as the demanding state,[1] where criminal charges are pending. *See Clipper v. State,* 295 Md. 303, 307, 455 A.2d 973 (1983). Initially, officials of the demanding state direct a detainer to prison officials in the asylum state that informs them that there are charges pending in another jurisdiction against one of their prisoners, based on an untried indictment, information or complaint. *See Clipper,* 295 Md. at 305–08, 455 A.2d 973; *State v. Boone,* 40 Md.App. 41, 44, 388 A.2d 150 (1978). The official having custody of the prisoner must inform him or her of the contents of the detainer and of his or her right as outlined under § 616D to request final disposition of the charges in the demanding state. § 616D(c). The prisoner may send a written request for transfer to the custodial official in the asylum state. § 616D(a), (b). That official forwards the consent notice to the appropriate prosecuting

---

1. Section 616C of the I.A.D. characterizes the state where the prisoner is incarcerated as the "sending state" and the state where charges are pending against the prisoner as the "receiving state." We use the term "demanding state" and "asylum state" for the purpose of simplicity throughout this opinion.

official of the demanding state, who must bring the prisoner to trial within 180 days from the date the request is received. § 616D(a), (b), (d).

Should the prisoner choose not to exercise his or her § 616D right to a final disposition, the demanding state then may request temporary custody pursuant to the procedures outlined in § 616E. During the 30 days following receipt of the demanding state's request, the governor of the asylum state may disapprove the request on his or her own motion or upon motion of the prisoner. § 616E(a). Following the expiration of the 30 days, the prisoner may be delivered to the demanding state but retains the right to file a petition for writ of habeas corpus in the asylum state and challenge the legality of the detainer at a pre-transfer hearing. § 616E(d); *Cuyler v. Adams*, 449 U.S. 433, 443–49, 101 S.Ct. 703, 709–12, 66 L.Ed.2d 641 (1981); *Statchuk v. Warden*, 53 Md.App. 680, 684–85, 455 A.2d 1000, *cert. denied*, 296 Md. 111 (1983). If the court concludes that delivery is legal, the prisoner may appeal that decision. *Statchuk*, 53 Md.App. at 683–86, 455 A.2d 1000. After exhausting the right of appeal, trial must commence within 120 days from the date of the prisoner's arrival in the demanding state. § 616E(c). At the earliest practicable time following trial or dismissal of the charges, the prisoner must be returned to the custody of the asylum state. § 616F(e).

## II. CASE *SUB JUDICE*

In August, 1982 Beachem began serving a 10–year sentence in the custody of the Maryland Division of Correction. The prosecuting attorney for the Commonwealth of Virginia lodged a detainer against Beachem in November, 1982 under the I.A.D. Beachem chose in December, 1982 not to request final disposition under § 616D. The record is silent about whether anything relevant to Beachem's transfer occurred until November, 1983 when Virginia officials filed a request for temporary custody of Beachem pursuant to § 616E.

We are not told what, if anything, transpired in the ensuing eight months except that on July 23, 1984, Beachem filed a petition for a writ of habeas corpus with the Circuit Court for Washington County attacking the Virginia detainer and contesting a Missouri detainer which the court had previously found to be valid in February of 1983.[2] Although the circuit court denied the petition without a hearing by order filed July 31, 1984, the State did not file an answer to Beachem's petition until September. The State explained that while the court's order dealt with the Missouri detainer, it failed to address Beachem's petition contesting the Virginia detainer. The State also brought to the court's attention that Beachem had been transferred to the temporary custody of Missouri on July 24, 1984. The court issued another order on November 2, 1984 denying the petition as to the Virginia detainer because Beachem was not "confined or restrained in his lawful liberty within the State" as required for one to petition the court for a writ of habeas corpus under Rule Z41. Beachem was returned to the custody of Maryland later that month.

The State filed a Motion for Reconsideration in March, 1985 indicating to the court that Maryland could not transfer Beachem to Virginia since he requested, but was not granted, a habeas corpus hearing. The court granted the motion on April 11, 1985 and ordered "that a hearing be set on the Petition for Writ of Habeas Corpus by the State's Attorney's Office as soon as practicable." The hearing was scheduled for June 9, 1986. In total, 43 months passed from the time Virginia lodged the detainer until the June 9 hearing.

---

**2.** On August 30, 1982, the prosecuting attorney for St. Louis County, Missouri, placed a detainer against Beachem. By order dated February 28, 1983, the court denied Beachem's petition for a writ of habeas corpus challenging his transfer to Missouri. After Beachem exhausted all his appeals, he was transferred to the temporary custody of Missouri on July 24, 1984. He received an 18–year sentence concurrent to the Maryland sentence he was then serving. Beachem was returned to Maryland in November, 1984.

At the hearing, Beachem stated he wanted the Virginia detainer dismissed without a hearing on its validity because it had taken Maryland over three years to act on the detainer. He also told the court that he and his attorney were not prepared to contest the validity of the detainer. The court permitted the State to proceed with its case and scheduled a later date for Beachem "to present evidence to the contrary or other evidence that is relevant on the detainer ... [w]hich will give Mr. Beachem a full opportunity to contest the validity of this detainer." Following the later hearing on July 8, 1986, the court issued a Memorandum and Order denying Beachem's request to block his delivery to the temporary custody of Virginia. We will turn to the merits of the issues presented.

### III. DISMISSAL OF DETAINER FOR NON–COMPLIANCE WITH EXTRADITION ACT

Appellant argues that the lodging of a request for temporary custody under the I.A.D. triggers compliance with certain provisions of the Uniform Criminal Extradition Act. Appellant alleges that specific time limits of the Extradition Act were not honored in this case and therefore the detainer should be dismissed. We disagree.

#### A. The Extradition Act

■ Maryland's Extradition Act and the I.A.D. are distinct and separate enactments. The Extradition Act, codified at Md.Code Ann. Art. 41, §§ 2–201 to –228 (1957, 1986 Repl.Vol.), is a uniform act passed by certain states unilaterally. Unlike the I.A.D., which is codified in Article 27, the Extradition Act is not a compact among the states. Rather, Maryland's Extradition Act outlines the duties of our Governor regarding the arrest and surrender to the custody of a demanding state persons properly charged there who are presently in, but not necessarily incarcerated in, Maryland.

While the Extradition Act, unlike the I.A.D., provides for the arrest and surrender of persons to the demanding state

who are otherwise at large in Maryland, it overlaps with the I.A.D. in that it also provides for temporary custody to the demanding state of persons incarcerated in Maryland. Under § 2–205 of the Extradition Act, the Governor may agree with the executive authority of another state for the extradition of a fugitive incarcerated there, with the return of the fugitive at Maryland's expense. Virginia's uniform extradition statute contains a provision similar to § 2–205 so that Virginia officials may seek temporary custody of a fugitive incarcerated in another state, including Maryland. *See* Va.Code Ann. § 19.2–89 (1949, 1983 Repl.Vol.). *See also, e.g., Ray v. Warden,* 13 Md.App. 61, 64, 281 A.2d 125 (1971) (Pennsylvania officials, pursuant to Maryland's Extradition Act, sought temporary custody to prosecute a fugitive imprisoned in Maryland). Thus, in the instant case, since appellant was incarcerated at the time Virginia lodged a detainer against him, Virginia officials could have sought temporary custody of appellant under either the Extradition Act or the I.A.D.

Virginia officials chose to seek custody through the I.A.D. Had they proceeded pursuant to the Extradition Act, Maryland would have had to follow a set of procedures different from those required under the I.A.D. Once arrested in Maryland for charges pending in another state, the Extradition Act would require that Maryland's Governor decide whether to comply with the extradition request within 30 days, or 90 days if a full extension is granted. §§ 2–207, –215, –217. If the Governor decides to grant the extradition request, he or she issues a governor's warrant. § 2–207. Certain rights enunciated in § 2–210 attach to a person arrested under that warrant: the person is brought before a judge and informed of the charge(s) and his or her right to procure legal counsel; for a prisoner who desires to contest the legality of his or her arrest, the judge fixes a reasonable time in which the prisoner may apply for a writ of habeas corpus, and once the prisoner petitions for the writ, the judge sets a hearing date; and where, following a hearing, the court denies the petition, the prisoner may

appeal to this Court. If no governor's warrant is issued within the permissible 30 to 90 days from the time of arrest, a judge or District Court commissioner may discharge the accused. § 2–217.

## B. Application of the Extradition Act to the I.A.D.

■ There is no provision under the I.A.D. that specifically limits the amount of time that may pass from the filing of a detainer until the habeas corpus hearing when a defendant chooses to challenge the detainer's validity. Appellant argues that we should apply the 30– to 90–day time limit that would have been applicable had Virginia sought custody of him under the Extradition Act rather than under the I.A.D.

Citing § 616B of the I.A.D., *Clipper v. State,* and *Cuyler v. Adams,* appellant explains his argument as follows. The member states to the I.A.D. expressed in § 616B their recognition that without cooperative procedures for the orderly disposition of outstanding detainers, the extradition process is lengthy and cumbersome, and an outstanding detainer can block a prisoner's eligibility for certain rehabilitative programs. The Court of Appeals has concluded from this that lodging a detainer against a prisoner under the I.A.D. imposes additional restraints on the prisoner's liberty similar to those emanating from the arrest of a person under the Extradition Act. *See Clipper,* 295 Md. at 307, 455 A.2d 973. The 30– to 90–day rule insures that fugitives sought under the Extradition Act will have a timely determination of any invalid restraint. The I.A.D., however, contains no corresponding protection for prisoners serving sentences but who, absent the detainer, would be eligible for work-release programs, treatment and rehabilitation. In reliance on *Cuyler,* 449 U.S. at 448, 101 S.Ct. at 711, appellant concludes that we must apply the 30– to 90–day rule because a prisoner fighting transfer to a demanding state under the I.A.D. retains all rights and remedies he would have under the Extradition Act. Appellant misapplies *Cuyler* to this case.

In *Cuyler,* the Supreme Court interpreted subsection (d) of § 616E of the I.A.D. As stated, § 616E sets out the procedures to be followed by the demanding state when requesting temporary custody of a prisoner from the asylum state. Subsection (d) provides that "[n]othing contained in [§ 616E] shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery ... but such delivery may not be opposed or denied on the ground that the executive authority of the sending state has not affirmatively consented to or ordered such delivery." The Supreme Court held, based on § 616E(d), that since an inmate sought under the Extradition Act would be entitled to a habeas corpus hearing, the asylum state could not deny that same right to a prisoner requested for temporary custody pursuant to the I.A.D. 449 U.S. at 449, 101 S.Ct. at 712. In *Statchuk,* 53 Md.App. at 685, 455 A.2d 1000, this Court relied on *Cuyler* to provide the right of appeal from the denial of a petition for writ of habeas corpus, so that a prisoner sought under the I.A.D. would enjoy the same right of appeal to this Court as § 2–210 guarantees to inmates sought under the Extradition Act.

In both *Cuyler* and *Statchuk,* rights originally available only to fugitives sought under the Extradition Act were applied to prisoners sought under the I.A.D. Without a hearing as required by *Cuyler,* and an appeal therefrom as required by *Statchuk,* the prisoner would necessarily be deprived of "any right which he may have to contest the legality of his delivery" in direct contravention of § 616E(d) of the I.A.D. Unlike the right to a hearing on a petition for a writ of habeas corpus or the right of appeal from a denial of the petition, the non-application of the Extradition Act's 30– to 90–day rule does not impede a prisoner's challenge to his or her transfer. That time period has no bearing on the prisoner's right to contest delivery but is germane only to the issuance of a governor's warrant. As we made clear in *Statchuk,* 53 Md.App. at 685, 455 A.2d 1000, the right to have the matter initially determined by the Governor, while

available to an inmate under the Extradition Act, is not preserved under § 616E(d) of the I.A.D. In fact, it is expressly excluded. Thus, we hold that having the validity of a detainer determined within 30 to 90 days is not among those rights available to prisoners sought pursuant to the I.A.D.

Appellant suggests that unless we grant him protection under the Extradition Act, "there is nothing to prevent a state from allowing a detainer to sit interminably against a prisoner who refuses to request a speedy trial under [§ 616D] of the IAD." In actuality, this contention is inaccurate. If officials of the demanding state lodge a detainer and fail to obtain custody of the accused for a substantial period, they risk both a dismissal of the charge in their state's court based on the denial of a right to a speedy trial, or should the matter proceed to trial, a loss of State's witnesses and accurate accounts of the offense.

We recognize the reality that the Virginia detainer did sit for an extraordinary amount of time before its validity was tested.[3] We point out, however, that while appellant claims that the Virginia detainer imposed an additional restraint on his liberty, he does not explain in what manner. Other than bare assertions that it deprived him of opportunities for prisoner treatment and rehabilitation, he offered no evidence of what his eligibility status would have been absent the detainer and what programs were denied to him on that basis. Indeed it seems highly unlikely that the Virginia detainer posed any additional restraint on appellant's liberties since the valid Missouri detainer, lodged prior to the Virginia detainer, resulted in an 18–year Missouri sentence

---

**3.** We do not disagree with appellant's claim that officials of the asylum state should act reasonably promptly in determining the validity of a detainer. Appellant does not raise, however, and thus we do not consider here, whether any other procedural rights afforded by the Extradition Act, such as those provided by § 2–210, should be available to a prisoner whose temporary custody is sought pursuant to the I.A.D.

to be served concurrently with appellant's 10–year sentence in Maryland.

## IV. DISMISSAL OF DETAINER DUE
## TO PREJUDICE

Appellant also contends that the lapse of 43 months between his receipt of notice of the Virginia detainer and his habeas corpus proceeding requires that the detainer be dismissed because the delay prejudiced his ability both to defend against the underlying Virginia charges and to contest the validity of the detainer. The court determined that it could not address the issue of Maryland's delay in a habeas corpus proceeding. We agree with that determination as it relates to appellant's claim that the delay prejudiced his ability to defend the Virginia charges. That claim presents a speedy trial issue for adjudication in the courts of Virginia. Nevertheless, the court should have addressed appellant's claim that the delay impaired his defenses to the validity of the detainer. Although the court erred in refusing to consider that issue, we do not reverse since we hold that appellant never alleged how he was prejudiced by the delay.

### A. Defenses Against Virginia Charges

■ The hearing judge properly refused to address appellant's claim that the delay prejudiced his ability to defend the Virginia charges. The impairment of a defense is one of the interests the right to a speedy trial was designed to protect. *See Stewart v. State,* 282 Md. 557, 563–64, 386 A.2d 1206 (1978). Thus, appellant's claim is essentially an argument that he has been deprived of a speedy trial in Virginia.

■ In the case of a fugitive sought under the Extradition Act, the Court of Appeals has determined that a speedy trial claim is a matter for the consideration of the courts of the demanding state. *Shoemaker v. Sheriff,* 258 Md. 129, 131, 265 A.2d 260 (1970). The Court reasoned that the prosecutor for the demanding state can present before that

state's courts the reasons for the delay in bringing the accused to trial. Hence, the courts of the demanding state are "in the best position to determine what harm, if any, was done." *Shoemaker,* 258 Md. at 131, 265 A.2d 260. This Court has since held that "[t]he courts of the custodial State are in no better position in an I.A.D. case than they are in an extradition case to delve into the underlying validity of the charges or the requesting State's right to try the accused." *Statchuk,* 53 Md.App. at 687, 455 A.2d 1000. Thus, a Virginia court, not a Maryland court holding a habeas corpus hearing under the I.A.D., is the proper forum for resolution of a speedy trial claim.

Despite the holdings of *Shoemaker* and *Statchuk,* appellant insists that we should entertain his claim that the delay has prejudiced his ability to defend the Virginia charges. He explains that since "his claim involves irregularities on the part of Maryland officials, Appellant is particularly foreclosed from a determination of his claim in Virginia." He cites no Virginia case law supporting his contention. We have no reason to expect that a Virginia court will fail to review the factors relevant to a speedy trial claim set out in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), specifically, (1) the reasons for a delay and (2) prejudice to the defendant. Should the Virginia trial court fail to conduct the proper constitutional analysis, appellant's recourse on that issue lies in the appellate courts of that State and the federal system.

### B. Defenses Against Detainer

■ Appellant also alleges that the delay prejudiced his ability to challenge in Maryland the validity of the Virginia detainer. Whether a habeas corpus hearing is the appropriate forum in which to raise the issue that delay prejudiced a defendant's ability to challenge the validity of a detainer under the I.A.D. has not been decided in this State, although that defense is available in cases proceeding under the Extradition Act.

When a person challenges transfer to another state pursuant to the Extradition Act by a petition for a writ of habeas corpus, the only grounds for relief he or she may raise at the pre-transfer hearing are "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." *Statchuk,* 53 Md.App. at 686–87, 455 A.2d 1000. The Court of Appeals has held that germane to a consideration of the legality of extradition documents at an extradition hearing is whether the delay unfairly prejudiced the prisoner in presenting a defense to any of these four issues. *Shoemaker,* 258 Md. at 132, 265 A.2d 260.

In *Statchuk,* 53 Md.App. at 686–87, 455 A.2d 1000, this Court held that the same four grounds to challenge the validity of a transfer under the Extradition Act are equally available to challenge a detainer lodged under the I.A.D. Since a challenge to release on a petition for writ of habeas corpus under the Extradition Act mirrors a challenge under the I.A.D., we hold that the petitioner in a habeas corpus proceeding under the I.A.D. may raise the issue of a delay that prejudiced his or her ability to defend the detainer's validity.

■ In the case *sub judice,* appellant claims that the delay prejudiced his ability to defend the detainer's validity, but he does not specify any of the four grounds available for challenge. In *Shoemaker,* the petitioner specifically alleged that the delay unfairly prejudiced his ability to demonstrate under the fourth ground for attack that he was not a fugitive because the lapse of 16 months prevented him from presenting evidence that he was not in the demanding state on the date the alleged crime occurred. In contrast, appellant argued at his habeas corpus hearing that the delay "constitutes prejudice against this petitioner in favor of the State," and that the time period that elapsed was an "inexcusable unexplained delay of magnitude." He then stated, "In the State's case I do not believe they have

offered any explanation whatsoever why forty-five [4] months of time has lapsed without this matter being properly resolved in this court. I think therefore I am being unduly prejudiced." These bare assertions were insufficient to establish that the delay prejudiced appellant's ability to challenge on any of the four permissible grounds the validity of the detainer.

■ Appellant argues, however, that the 43–month delay from the time Virginia lodged the detainer until his habeas corpus hearing makes the detainer *per se* invalid because the delay presumptively prejudiced his ability to defend the Virginia detainer. Appellant's sole complaint appears to be that the State delayed the hearing with no explanation. He analogizes his claim that prejudice should be presumed to the analysis for determining presumptive prejudice regarding a speedy trial claim. *See Wilson v. State*, 281 Md. 640, 658, 382 A.2d 1053, *cert. denied*, 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978) (delay of more than four years from arrest until trial deemed presumptively prejudicial to defendant's right to speedy trial and burden shifts to State to rebut presumption). The issue of whether a petitioner seeking a writ of habeas corpus may rely on presumptive prejudice resulting from an extensive period of time between the lodging of a detainer and a habeas corpus hearing has not been decided in Maryland. At the hearing, appellant contended he was prejudiced but did not contend that based on the lapse of time he· was presumptively prejudiced. Accordingly, we will not reach that issue. Rule 1085.

## V. REQUEST FOR CONTINUANCE

Appellant next asserts the court erred in denying his request for a continuance made on June 9, 1986, the first day of his habeas corpus hearing. Appellant sought the continuance because he had not been given prior notice of

---

**4.** Actually, the time lapse was 43 months.

the details of the charges pending in Virginia and had not had an opportunity to meet with counsel to prepare his challenge to the validity of the Virginia detainer. The hearing judge permitted the State to present its case with cross-examination of the State's witnesses by appellant's counsel. The court granted a continuance for the presentation of appellant's evidence.

■ A month later on July 8, 1986, the hearing resumed. New counsel represented appellant. The only witness called to the stand was appellant, who explained his arguments to the court. At that point, neither appellant nor his counsel suggested that they needed more time to prepare nor did they recall any of the State's witnesses for further examination. They did not complain about the partial continuance or allege that it prejudiced appellant in any way. Hence, we hold the issue was waived for our review. Rule 1085.

■ Even if we were to consider the merits of appellant's claim, we would hold that the hearing judge did not err in ordering a partial continuance. Rulings on requests for continuances are within the sound discretion of the judge and will not be disturbed on appeal absent an abuse of that discretion. *Hoss v. State*, 266 Md. 136, 144, 292 A.2d 48 (1972). In this case, on June 9 the hearing judge granted appellant an extra month to prepare his case and then on July 8 appellant testified to the facts and presented full legal argument. Appellant does not allege that he needed the State's witnesses for additional examination. The court considered the convenience of the State's witnesses, including a Virginia police officer who had to travel to Washington County, while affording appellant every opportunity to present his challenge. Moreover, appellant had the advantage of an extended period of time in which to find holes and attack the already-rested State's case. We hold that there was no abuse of discretion in allowing the State to proceed with its witnesses, and in granting appellant an extra month to prepare his challenges.

## VI. HEARING JUDGE'S RECUSAL

██ Appellant has also requested this Court to review the record to determine whether the hearing judge's failure to recuse himself deprived appellant of his right to a fair hearing. Appellant admits this issue was not presented to the hearing court. When appellant appeared before the court on June 9, 1986, neither he nor his attorney requested that the hearing judge recuse himself. Hence, we hold this issue was not preserved for our review. Rule 1085.

Appellant argues that this omission should be excused on the basis of ineffective assistance of hearing counsel. Appellant asserts the hearing judge should have recused himself because "[t]wice prior to the hearing, the judge summarily reviewed and denied appellant's habeas petition. Appellant contends that the judge may have been disinclined to admit previous error and, thus have been predisposed to deny the writ." We do not agree. The court did admit previous error when it granted the State's Motion for Reconsideration based on the court's initial failure to hold a habeas corpus hearing.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.