**In re Eduardo GARCIA,**

**Appeal of Eduardo Garcia, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 2009.

Filed Nov. 4, 2009.

Robert C. Greene, Warren, for appellant.

Elizabeth A. Ziegler, Asst. Dist. Atty., Dennis Luttenauer, Tionesta, for Commonwealth, participating party.

BEFORE: FORD ELLIOTT, P.J., ORIE MELVIN and BENDER, JJ.

OPINION BY ORIE MELVIN, J.:

¶1 Appellant, Eduardo Garcia, appeals from the July 7, 2008 order which denied his petition for writ of *habeas corpus*. After review, we affirm.

¶2 The facts and procedural history may be summarized as follows. On April 19, 2007, the District Attorney of Forest County filed a petition seeking a hearing pursuant to the Interstate Agreement on Detainers (IAD), 42 Pa.C.S.A. §§ 9101–9108. Certified Record (C.R.) at 1. The petition was filed in response to a request by the Los Angeles County District Attorney's Office for temporary custody of Appellant in order to permit his prosecution in California on charges of murder and attempted murder. *Id.* Appellant was then and presently is incarcerated in the State Correctional Institution in Forest County.[1] The trial court scheduled a hearing on the petition for May 9, 2007.

¶3 Represented by counsel, Appellant appeared for the scheduled hearing and was advised of the charges filed against him by the State of California. N.T. Hearing, 5/9/07, at 3–6. The trial court indicated that the matter would proceed to a second hearing "on the issue of extradition." *Id.* at 7. The next event was the filing of another petition by the Commonwealth pursuant to the IAD on February 19, 2008, which requested another hearing. That hearing was held on March 7, 2008, and Appellant, still represented by counsel, was again advised of the charges filed by the State of California. N.T. Hearing, 3/7/08, at 3–4. The trial court also advised Appellant that he could file, within 30 days, a petition for a writ of *habeas corpus*. *Id.* at 4–7.

¶4 On April 7, 2008, Appellant filed a *pro se* petition for writ of *habeas corpus*, claiming that extradition to California would violate the Uniform Criminal Extradition Act (UCEA), 42 Pa.C.S.A. §§ 9121–9148. C.R. at 6. Counsel filed an amended petition which also challenged his extradition. *Id.* at 8. The trial court held a hearing on the petition on July 2, 2008. The Commonwealth introduced the docu-

---

1. The Commonwealth averred that Appellant's minimum sentence would not expire until November 2029 and that his maximum sentence would not expire until November 2054. C.R. at 1. Appellant does not challenge this assertion.

ments forwarded to the District Attorney from the State of California, and Appellant raised no objection. N.T. Hearing, 7/2/08, at 3–5. Appellant presented no evidence. *Id.* at 6. The trial court denied Appellant's petition that same date, and Appellant filed a timely *pro se* appeal. In response to an order by the trial court, Appellant also filed a *pro se* Rule 1925(b) concise statement. The trial court authored an opinion in compliance with Pa.R.A.P. 1925(a). New counsel was subsequently appointed.

¶ 5 Appellant presents two issues for our review:

1. Did the trial court abuse its discretion and not follow Pennsylvania Law in stating that 42 Pa.C.S.A. § 9136 (specifically the thirty-day rule) does not apply to [Appellant] in this case because of the fact that he was incarcerated at the time on other charges?

2. Did the trial court abuse its discretion and not follow Pennsylvania Law in not having an interpreter present at the extradition hearing, when [Appellant] does not speak English?

Appellant's brief at 4.[2]

¶ 6 "Ordinarily, an appellate court will review a grant or denial of a petition for writ of habeas corpus for abuse of discretion[.]" *Commonwealth v. Judge,* 591 Pa. 126, 142 n. 13, 916 A.2d 511, 521 n. 13 (2007), *cert. denied,* 552 U.S. 1011, 128 S.Ct. 533, 169 L.Ed.2d 374 (2007). In his first claim, Appellant argues that the trial court erred in failing to apply the specific provision of the UCEA which limits the commitment of a fugitive to a period of 30 days,[3] during which time a governor's warrant must issue. Noncompliance with this provision, according to Appellant, warrants relief.

¶ 7 In the case *sub judice,* the District Attorneys of Forest County, Pennsylvania and Los Angeles County, California proceeded pursuant to the IAD, not the UCEA. We have previously set forth the principles behind the IAD as follows.

The IAD is an agreement between forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, that establishes procedures for the transfer of prisoners incarcerated in one jurisdiction to the temporary custody of another jurisdiction which has lodged a detainer against a prisoner. Unlike a request for extradition, which is a request that the state in which the prisoner is incarcerated transfer custody to the requesting state, a detainer is merely a means of informing the custodial jurisdiction that there are outstanding charges pending in another jurisdiction and a request to hold the prisoner for the requesting state or notify the requesting state of the prisoner's imminent release.

*Commonwealth v. McNear,* 852 A.2d 401, 404 n. 3 (Pa.Super.2004) (citations omitted). We have also held that, "[t]he Uniform Extradition Act, 42 Pa.C.S.A. § 9121 *et seq.,* is inapplicable to sentenced prisoners." *Commonwealth v. Lloyd,* 370 Pa.Super. 65, 535 A.2d 1152, 1160 n. 4 (1988), *appeal denied,* 518 Pa. 637, 542 A.2d 1367 (1988). At least one Pennsylvania federal district court has similarly concluded that the UCEA "is inapplicable to persons [ ] who are sentenced prisoners in Pennsylvania and who are facing criminal charges in another state which is also a party to the Interstate Agreement on Detainers." *Wallace v. Hewitt,* 428 F.Supp. 39 (M.D.Pa.1976). Thus, at first blush, it would appear that the procedural require-

---

**2.** These issues were preserved in Appellant's *pro se* Rule 1925(b) statement.

**3.** The UCEA does provide for a 60–day extension of this time period. 42 Pa.C.S.A. § 9138.

ments of the UCEA are not applicable here. However, in 1981, the U.S. Supreme Court addressed a situation where a prisoner sought to invoke certain protections of the UCEA in a proceeding under the IAD in *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

¶ 8 *Cuyler* addressed "the relationship between the Interstate Agreement on Detainers and the Uniform Criminal Extradition Act." 449 U.S. at 435, 101 S.Ct. 703. The prisoner there was serving a sentence in Pennsylvania when a prosecutor in New Jersey lodged a detainer against him and a request for temporary custody so he could be tried on criminal charges there. The prisoner filed an action in federal court seeking injunctive and declaratory relief in addition to money damages, claiming that his rights to due process and equal protection had been violated.

■ ¶ 9 The U.S. Supreme Court observed that

[a] prisoner transferred under the Extradition Act is explicitly granted a right to a pretransfer 'hearing' at which he is informed of the receiving State's request for custody, his right to counsel, and his right to apply for a writ of habeas corpus challenging the custody request. He is also permitted 'a reasonable time' in which to apply for the writ.

*Id.* at 443, 101 S.Ct. 703. The Court also noted that the IAD contained no express provision for a pretransfer hearing. *Id.* at 444, 101 S.Ct. 703. It went on to examine other language in Article IV of the IAD which appears to safeguard "*all* pre-existing rights," *id.* at 447, 101 S.Ct. 703, and held that "prisoners transferred pursuant to the provisions of the [IAD] are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to the receiving State." *Id.* at 450, 101 S.Ct. 703. This Court has interpreted this language to guarantee a prisoner a right to "a pre-trial hearing." *Commonwealth v. Booze*, 953 A.2d 1263, 1267 n. 5 (Pa.Super.2008).

¶ 10 Appellant's argument is that one of those pre-existing rights in the UCEA is the provision limiting the commitment of a fugitive to a 30–day period during which time a governor's warrant must execute, which time period may be extended only by 60 additional days. Appellant submits that his hearing held on July 2, 2008 was well beyond the 30– or 90–day period permitted by the UCEA. Appellant's brief at 10–11.

¶ 11 The trial court reasoned that because "[t]he purpose of the 30–day rule with respect to extradition proceedings is to prevent the person from languishing in jail without judicial supervision," that provision had no application to Appellant who was already serving a sentence of incarceration. Trial Court Opinion, 10/6/08, at 2 (quoting *Commonwealth v. Heilman*, 289 Pa.Super. 314, 433 A.2d 83, 85 (1981)). It further determined that Appellant had been afforded all of the protections in the IAD, including notice and the opportunity to challenge the Commonwealth's petition. *Id.* at 3–4.

¶ 12 Turning to Appellant's argument, we find his reliance on *Commonwealth ex rel. Knowles v. Lester*, 456 Pa. 423, 321 A.2d 637 (1974), is misplaced. There, the petitioner/appellant was arrested and charged with receiving stolen property and bringing stolen property into the Commonwealth from Florida. The petitioner was jailed, and, at the same time, a warrant was issued and lodged against the petitioner by the State of Florida. The petitioner was not charged with being a fugitive until four months later, at which time the Commonwealth of Pennsylvania withdrew its charges against him. The trial court granted the petition for writ of *habeas corpus*, but this Court reversed. Our Su-

preme Court reversed, concluding that the 30–day rule set forth in the UCEA[4] was violated. The Supreme Court determined that the act of lodging a detainer against a person who was in custody was the equivalent of an arrest. 456 Pa. at 426, 321 A.2d at 639. It explained that "[t]he clear intent of section 15 of the Uniform Criminal Extradition Act [now 42 Pa.C.S.A. § 9136] is that an alleged fugitive may not be committed for more than thirty days while awaiting the warrant of the governor of the demanding state." *Id.* at 428, 321 A.2d at 640.

¶ 13 *Knowles* involved a person who was merely in custody facing other charges at the time the detainer was lodged under the UCEA. "[T]he Commonwealth admitted that if appellant had posted bail on the local charges the fugitive detainer would have prevented his release." *Id.* at 427, 321 A.2d at 640. By contrast, Appellant in the case *sub judice* was serving a lengthy term of incarceration in a State Correctional Institute here in the Commonwealth, and he does not even suggest there was any chance he may have been released but for the detainer. He was clearly much more than an "alleged fugitive" whose liberty was restrained by a detainer. Additionally, this matter arose pursuant to the IAD, not the UCEA. Thus, we must determine whether the 30–day rule in the UCEA applies when a state proceeds against an already incarcerated prisoner under the IAD.

¶ 14 Although we have located no appellate decision in Pennsylvania addressing the precise issue raised, nor has Appellant provided us with such authority, we find instructive a case from a sister state addressing an identical argument. In *Beachem v. Maryland,* 71 Md.App. 39, 523 A.2d 1033 (1987), *cert. denied,* 310 Md. 490, 530 A.2d 272 (1987), the appellant had just begun serving a 10–year term of incarceration in the State of Maryland when the Commonwealth of Virginia lodged a detainer against him in November 1982 under the IAD. In November 1983, Virginia requested temporary custody of the appellant pursuant to the IAD. In July 1984, the appellant filed a petition for a writ of *habeas corpus,* but no hearing thereon was held until June 1986, 43 months after the detainer had been lodged. As in the present case, the appellant contended that the 30–day rule set forth in the UCEA (Md. Ann.Code art. 27, § 616, repealed; *see now* Md. Correctional Services Code Ann. § 8–405) was violated. Applying the principles set forth in *Cuyler, supra,* the Court explained:

> Unlike the right to a hearing on a petition for a writ of habeas corpus or the right of appeal from a denial of the petition, the non-application of the Extradition Act's 30– to 90–day rule does not impede a prisoner's challenge to his or her transfer. That time period has no bearing on the prisoner's right to contest delivery but is germane only to the issuance of a governor's warrant.

523 A.2d at 1038. Accordingly, the Court held that "having the validity of a detainer determined within 30 to 90 days is not among those rights available to prisoners sought pursuant to the IAD." *Id.*

¶ 15 We find this reasoning is both sound and persuasive, as well as consistent with both *Cuyler* and the case law of this Commonwealth. We, therefore, hold that the provisions of the UCEA limiting the commitment of a previously incarcerated prisoner to a period of 30 or 90 days do not apply when a state seeking custody proceeds pursuant to the IAD. In other words, the 30– to 90–day rule is not the type of "pre-hearing right" afforded to

---

4. At that time, the UCEA was codified in Pennsylvania at 19 P.S. §§ 191.1–31.

an already incarcerated prisoner against whom a detainer is lodged under the IAD. Accordingly, Appellant had no right to a hearing on his petition for writ of *habeas corpus* within that same time period in order to determine the validity of the detainer. Furthermore, we find in the instant case that Appellant was properly permitted under the principles set forth in *Cuyler* to challenge the validity of the request by the State of California through a hearing prior to his transfer. Again, Appellant lost no rights merely because that hearing was held more than 30 days after the IAD proceedings against him by the State of California were instituted, and the trial court, therefore, did not abuse its discretion in denying him relief on this claim.

¶ 16 Appellant's other contention is that the trial court erred and/or abused its discretion in failing to provide him with an interpreter at his July 2, 2008 hearing.

As a general rule, the determination of whether an interpreter is warranted in a particular case is within the sound discretion of the [trial] court. The discretion of the trial court, however, is to determine the factual question of whether an interpreter is needed; a trial court does not have discretion to decide whether a defendant who needs an interpreter has a legal entitlement to one.

Thus, where the court is put on notice that a defendant has difficulty understanding or speaking the English language, it must make unmistakably clear to him that he has a right to have a competent translator assist him, at state expense if need be. Where, on the other hand, no request for an interpreter has been made and the defendant appears to comprehend the nature of the proceedings and the charges against him, the trial court does not abuse its discretion by pro-

ceeding without appointing an interpreter.

*Commonwealth v. Wallace,* 433 Pa.Super. 518, 641 A.2d 321, 324 (1994) (citations and quotation marks omitted); *see also* 42 Pa. C.S.A. § 4412, **Appointment of interpreter.**

¶ 17 Appellant correctly points out that he advised the trial court at the March 7, 2008 hearing that he did not speak or read English. N.T. Hearing, 3/7/08, at 5, 7. The trial court did ask the prosecutor whether an interpreter was available, although that question was not directly answered. *Id.* at 6. Nevertheless, Appellant responded in English to questions posed to him during that hearing, and counsel for Appellant explained that while Appellant had "some difficulty with English," counsel had and would explain the right to file a petition for a writ of *habeas corpus* within 30 days. *Id.* at 5–6. The trial court also advised Appellant of that right. *Id.* at 7. As noted, Appellant did timely file such a petition, *pro se,* on April 7, 2008. It is also significant to observe that when Appellant appeared for the initial hearing on May 9, 2007, he never indicated any difficulty in understanding the proceedings.

¶ 18 At the July 2, 2008 hearing on Appellant's petition for a writ of *habeas corpus,* neither Appellant nor his counsel gave any indication that Appellant was not able to understand the proceedings. In its opinion addressing its failure to appoint an interpreter, the trial court explained as follows.

At the hearings on May 9, 2007 and July 2, 2008, [Appellant] did not request an interpreter and the Court had no reason to believe that [Appellant] had difficulty speaking or understanding the English language. At the hearing on May 9, 2007, [Appellant] had no difficulty understanding and responding to the questions asked by the Court, and he had no

difficulty conversing with his counsel. Although [Appellant] indicated that he had difficulty understanding the English language at the hearing on March 7, 2008, the Court decided an interpreter was not necessary for this hearing, because the hearing was only for the limited purpose of informing [Appellant] pursuant to the [IAD] that California made a demand for temporary custody, that he is being charged with the crime of murder, that he has a right to counsel, that he has a right to request a final disposition under Article III of the [IAD], and that he has a right to file a petition for writ of habe[a]s corpus within thirty (30) days. * * * * [Appellant's] counsel stated that he had explained the law and the procedure of which [Appellant] was required to be informed. The demeanor and responses made by [Appellant] evidenced an effort to stymie the proceedings, rather than a genuine inability to comprehend the proceedings.

Trial Court Opinion, 10/6/08, at 4.

¶ 19 Based on the foregoing determinations that Appellant did not request an interpreter and that he did appear to comprehend the nature of the proceedings, which findings are amply supported by the record, we discern no abuse of the trial court's discretion in declining to appoint an interpreter for him. *See Wallace, supra.*

¶ 20 In conclusion, having found no merit to Appellant's claims on appeal, we must affirm the order denying his petition for writ of *habeas corpus.*

¶ 21 Order affirmed.