J-S36003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IRENA SHIE | : | |
| | : | |
| Appellant | : | No. 2971 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 18, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-SA-0000409-2022

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY BOWES, J.:                                **FILED OCTOBER 18, 2023**

Irena Shie appeals *pro se* from the judgment of sentence imposed following her conviction of the summary offense of harassment. We affirm.

In short, the facts of this case are as follows. Appellant was unhappy with the accommodations Garnett Valley Elementary School provided to her daughter related to her mental health diagnoses. She directed her displeasure at the school's principal, Katelyn Jones, sending dozens of emails to Ms. Jones and various other members of the school's staff about Ms. Jones's purported misdeeds, including being a bully, a child abuser, and a murderer. *See* N.T. Trial, 10/18/22, at 14-15, 18, 25-28. After she was prohibited from coming onto school grounds for any reason other to drop off or pick up her daughter, Appellant lingered outside Ms. Jones's office window on fifteen or twenty occasions after the pick-up, making Ms. Jones feel uncomfortable. *See* N.T.

Trial, 10/18/22, at 29. Appellant additionally posted about Ms. Jones online, accusing her of being a mentally ill child abuser and murderer who "has no hesitation to put children at risk, or even push children into committing suicide[,] so long as she could protect her reputation, salary, and position." Commonwealth's Exhibit 3.

Based upon this conduct towards Ms. Jones, Appellant was charged with one count of summary harassment pursuant to 18 Pa.C.S. § 2709(a)(3) ("A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]"). She was initially tried and convicted by the magisterial district judge. At a *de novo* trial before the court of common pleas, Appellant represented herself. As English is not her first language, the trial court offered Appellant the services of a translator, but she declined. *See* N.T. Trial, 10/18/22, at 42. Instead, Appellant, who indicated that she has difficulty hearing and processing speech, proceeded with a stenographer who utilized equipment that enabled Appellant to read everything that was said in the courtroom. *Id*. at 3-4. When it came time for her to testify, the trial court offered to give Appellant a continuance so that she could write out her testimony and read it to the court, but Appellant declined. *Id*. at 41-42.

Appellant's defense was, in essence, that the communications were warranted because Ms. Jones harassed Appellant and her children, causing

Appellant, her daughter, and her son to become suicidal. *Id*. at 62. The trial court permitted Appellant to testify at length about her concerns with Ms. Jones and the services her children received from the school. *Id*. at 42-82. However, the trial court precluded Appellant's son from offering: (1) hearsay testimony about what a therapist said to Appellant, and (2) testimony it deemed irrelevant concerning his experience at the district's high school. *Id*. at 59-61.

Ultimately, the trial court found Ms. Jones to be credible and rejected Appellant's defense, concluding that "[n]o matter how upset and frustrated Appellant may have been about her daughter's situation," that "did not justify her unreasonable and threatening behavior towards Ms. Jones[.]" Trial Court Opinion, 4/4/23, at 18. Accordingly, it convicted Appellant of violating § 2709(a)(3) and sentenced her to a $300 fine.

This timely appeal followed the trial court's denial of Appellant's motion for reconsideration. The court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), Appellant timely filed a statement, and the trial court authored a Rule 1925(a) opinion. Therein, the court opined that Appellant arguably waived all of her appellate issues by filing a Pa.R.A.P. 1925(b) statement that failed to properly identify her claims of error. *See* Trial Court Opinion, 4/4/23, at 8. It contended that it had to guess what issues Appellant was attempting to raise in authoring its opinion, and advocated for a finding of waiver. *Id*. at 9 (citing, *inter alia*,

*Commonwealth v. Heggins*, 809 A.2d 908, 912 (Pa.Super. 2002) ("Even if the trial court correctly guessed the issues Appellant brings before this Court, the vagueness of Appellant's Concise Statement renders all issues raised therein waived.")).

It is axiomatic that an appellant's failure to comply with the dictates of Rule 1925(b) will result in waiver. *See*, *e.g.*, Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues . . . not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Accordingly, before we turn to Appellant's questions on appeal, we examine the sufficiency of Appellant's Rule 1925(b) statement. Therein, she alleged the following errors, which we have re-ordered for ease of discussion:

   a.   The court erred, as a matter of law when the court rejected to provide a court appointed attorney considering that the Appellant suffered from a disability which impedes speech, hearing and communication overall. Appellant's civil, legal, and human rights were violated because of which many aspects of the hearing from the appellant side were not carried out properly[.]

   b.   The court erred as a matter of law because Appellant wasn't afforded the reasonable accommodations guaranteed by the Title II of American with Disabilities Act. As the result, Appellant could not participate meaningfully at the hearing[.]

   c.   Appellant was not in a position to accurately address any statements made against them due to their disability affecting their communication[.]

d.     The court erred as a matter of law when the court rejected [her] testimony as irrelevant before Appellant was able to finish the entire testimony to summarize relevancy considering their disability[.]

e.     The court abused its discretion by letting a witness stay in the court room while it was known that witnesses would have to be sequestered while also aware of the Appellant's disability[.]

f.     The court abused its discretion for its failure to include incorporate [*sic*] common sense.  Appellant has parental rights that were violated by [Ms. Jones[1]] and the Garnet Valley School District and there is legitimate reason for every and each Appellant's communication with and conduct at the Garnet Valley School District.   [Ms. Jones]'s unceasing, unwanted and unwelcomed harassment and abuse against children with disabilities and their family despite multiple cease and desist letters issued by Appellant against defendant could eventually result in tragedy where children might commit suicide.

g.     Appellant felt that there was a hostile environment being created for them to provide their statements and felt unsafe[.]

Concise Statement, 11/29/22, at unnumbered 1-2 (cleaned up).

We agree with the trial court that the final issue (g) is too vague to alert the trial court to the nature of the alleged error.[2]  However, as for the rest, we do not find the articulated errors to be so defective that all issues stated

---

[1] Appellant here referred to Ms. Jones as "the defendant," as if Appellant were litigating one of her civil claims against the school, rather than defending a criminal prosecution.  **See** N.T. Trial, 10/18/22, at 10-11 (Ms. Jones indicating that Appellant has filed discrimination claims against the district "in multiple settings").

[2] In any event, Appellant appears to have abandoned this issue on appeal.

therein are waived. Instead, we shall compare the issue included in the Rule 1925(b) statement with the questions presented on appeal to ascertain whether the claims of error were preserved in the latter, and thereafter decide waiver on an issue-by-issue basis.[3]

The questions presented in Appellant's brief in this Court, which we also have opted to re-order, are as follows:

[1]. Whether the Appellant's rights were violated where the trial court imposed [a] fine on the Appellant without providing an opportunity to the Appellant for appointing an interpreter as English is not first language of the Appellant, without taking into consideration all and entire evidence while deciding the fate of the matter and without giving the opportunity to the Appellant to be represented by an attorney during the trial and hearings?

[2]. Was the disability accommodation provided in the trial sufficient for Appellant to meaningfully participate in the hearing?

[3]. Did the trial court err and abuse its discretion by refusing Appellant to continue testifying due to the judge's inaccurate perception of being irrelevant?

[4]. Did the trial court erred [*sic*] by not taking into consideration cogent and sufficient evidence produced by the Appellant[?]

[5]. Did the trial court fall in [*sic*] erred and abused its discretion by not letting the witness testify?

---

[3] The Commonwealth advocates for dismissal of this appeal based upon defects in Appellant's brief, asserting that she has opted "to use her brief as an outlet for personal grievances as opposed to an opportunity to develop substantive legal arguments[.]" Commonwealth's brief at 11. As with the trial court's assertion of complete waiver, we decline to render a wholesale rejection of Appellant's questions, but rather will adjudge waiver issue by issue.

- 6 -

[6]. Did the trial court abuse its discretion by placing reliance on false testimony and hearsay of the witness [Ms.] Jones . . . and without corroborating such testimony[?]

[7]. Did the court abuse its discretion and err for harassment conviction based on emails which [Ms. Jones] was not the recipients and a social media post that was asking for help against unceasing harassment, child abuse and murder attempts by [Ms. Jones]?  Moreover, it was [Ms. Jones] stalking social media that was not shared with her.

Appellant's brief at 6-7 (cleaned up).

We first address Appellant's contention that her right to counsel was violated.  The docket reflects that Appellant was represented by different privately-retained attorneys during the course of the litigation.  However, by the time of the *de novo* trial, she was proceeding *pro se* "because there was not an attorney that w[as] willing to go against the School District."  N.T. Trial, 10/18/22, at 42.

While this issue was preserved in Appellant's Rule 1925(b) statement, and is included in Appellant's statement of questions and statement of the scope and standard of review, she fails to develop it with argument and citation to pertinent authorities elsewhere in her brief.  In any event, as the trial court noted, Appellant neither made a request for appointed counsel at trial, nor was she entitled to such appointment because the court determined prior to commencing trial that Appellant did not face imprisonment.  **See** Trial Court Opinion, 4/4/23, at 13-14 (citing **Commonwealth v. Blackham**, 909 A.2d 315, 318 (Pa.Super. 2006)).  **See also** Pa.R.Crim.P. 122(A)(1) (providing that counsel shall be appointed "in all summary cases, for all

defendants who are without financial resources or who are otherwise unable to employ counsel when there is a likelihood that imprisonment will be imposed").

Since Appellant did not face imprisonment and she was not in fact sentenced to confinement, the issue would merit no relief even if it were properly presented. *Cf. Commonwealth v. Soder*, 905 A.2d 502, 504 (Pa.Super. 2006) (vacating and remanding for a new trial because the defendant received a sentence of imprisonment following a trial that took place without the court first determining whether the defendant was indigent or otherwise unable to employ counsel).

Appellant also contends that her rights were violated because the trial court did not appoint an interpreter for her. That issue is not included in her Rule 1925(b) statement and is therefore waived. We note, however, that the trial court, before starting the trial, expressly asked Appellant whether she spoke English or needed a translator. *See* N.T. Trial, 10/18/22, at 3. Appellant declined the translator and thereafter participated in the trial in fluent English. Accordingly, the absence of a translator gives us no cause to disturb her conviction or sentence. *See In re Garcia*, 984 A.2d 506, 511–12 (Pa.Super. 2009) (affirming decision to proceed without an interpreter where the defendant did not request one and the court had no reason to believe he had difficulty understanding English).

Appellant's second question, and the remaining portion of her first one, assail the sufficiency of disability accommodations provided to her at trial. These issues were preserved in Appellant's Rule 1925(b) statement and are argued in her brief. In particular, Appellant maintains that she suffers from hearing impairment as well as an autism spectrum disorder ("ASD"), and that the trial court did not follow proper procedures for accommodating her disabilities, in violation of the Americans with Disabilities Act ("ADA"). **See** Appellant's brief at 64-75.

Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. However, the ADA "does not require States to employ any and all means to make judicial services accessible or to compromise essential eligibility criteria for public programs." **Tennessee v. Lane**, 541 U.S. 509, 531-32 (2004). "It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." **Id**. at 532.

As for the portion of Appellant's claims that the trial court violated her rights under the ADA, concerning her purported ASD, our review of the record reveals that the first time Appellant asserted that she suffers from ASD was in her post-sentence motion for reconsideration. At trial, Appellant indicated

- 9 -

that her son has autism, and asserted that children who have autism are at increased risk of suicide. *See* N.T. Trial, 10/18/22, at 57, 64. However, the only disabilities she claimed for herself were ADHD, hearing impairment, and that she processes auditory information slowly. *Id*. at 3, 41-42. The trial court cannot be expected to accommodate a disability of which it has no reason to be aware. *Accord Stultz v. Reese Bros., Inc.*, 835 A.2d 754, 761 (Pa.Super. 2003) ("To trigger an employer's duty to participate in the interactive process, the disabled individual must put the employer on notice that he/she has a disability and, based on such notice, the employer must be able to reasonably deduce a request for accommodation has been made."); *Sharnese v. California*, 547 Fed.Appx. 820, 823 (9th Cir. 2013) ("Because he cannot show that any court employee took actions 'by reason of' a disability of which they were unaware, the ADA claim was properly dismissed.").

The trial court addressed its accommodations of Appellant's expressed disabilities at the October 18, 2022 trial as follows, which we have confirmed is fully supported by the certified record:

> 1) At the start of the hearing, the trial court asked Appellant if she speaks English and if she requires a translator in which she responded that she does speak English and does not need a translator.

> 2) A stenographer was requested for the hearing to sit next to Appellant and type every spoken word so that Appellant may view everything being said in court through a closed-caption (CART) system.

3) Upon Appellant taking the stand to testify, while she was appreciative for the accommodations made, she specked that she has difficulty hearing and prefers to communicate in writing.

4) In response, the trial court asked Appellant if she would like a continuance of the hearing in order to write out what she would like to say and her side of the story, so she can come back another day and read what she wrote.

5) After Appellant rejected the idea of a continuance, the court again explained that she would be able to write out anything that she would like to say in advance to testifying and further advised Appellant that if she does agree to go forward today then she is waiving any right that she would have to appeal this issue.

6) The court informed Appellant that she was being offered the opportunity to cure the defect being alleged.

7) Appellant responded that this option was difficult because her son was present to testify at the hearing.

8) The trial court then offered that Appellant's son could still testify at the October 18, 2022 hearing while he is present, and Appellant could come back on a later date to read her writing of her side of the story.

9) Appellant responded that she has prepared some written statements, so she could read them at the October 18, 2022 hearing.

10) Before proceeding with Appellant's testimony, the trial court reminded Appellant that if she chooses to proceed with her testimony in the hearing, Appellant would not be able to later allege that she was denied the opportunity for a continuance.

11) Appellant affirmed that she understood and accepted before proceeding with her testimony.

The trial court properly afforded Appellant a meaningful opportunity to be heard as to the charge of harassment and provided her with ample opportunities to cure the alleged defects.

Trial Court Opinion, 4/4/23, at 10-11 (cleaned up).

Appellant provides no authority to suggest that the trial court's accommodations were legally insufficient to address her stated disabilities. Instead, she baldly claims that it failed to follow the proper procedures, laws, and rules without specifying any desired accommodation that should have been provided but was not. **See** Appellant's brief at 69-71. She then supplies brief descriptions of non-existent decisions without even explaining how the fictional authorities entitled her to more than what she received. **See** Appellant's brief at 71-74.[4] The trial court provided the accommodations Appellant requested, and even offered her more.[5] No relief is warranted on this baseless claim.

In her two next issues, Appellant challenges evidentiary rulings made at trial. In this vein, we note that the admissibility of evidence "is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or

---

[4] We have searched Westlaw using both the case names and citations proffered by Appellant and determined that either no case by the proffered caption exists or that a case by the listed name exist but did not hold as Appellant represents in her brief.

[5] We further observe that after allowing Appellant to read her testimony into evidence, the trial court denied the Commonwealth's request to cross-examine Appellant. **See** N.T. Trial, 10/18/22, at 82. Hence, Appellant was not required to provide oral answers to adverse questioning.

such lack of support to be clearly erroneous." ***Commonwealth v. Ivy***, 146 A.3d 241, 250 (Pa.Super. 2016) (cleaned up).

Appellant first contends that the trial court improperly truncated her testimony upon deeming it irrelevant. Appellant has not identified by reference to the certified record at what point she was wrongfully precluded from offering relevant testimony. Nor has she provided any meaningful development of this claim. Consequently, we agree with the trial court that this vague and overbroad claim of error is waived. ***See*** Trial Court Opinion, 4/4/23, at 12.

Moreover, from our review of the trial transcript, the trial court liberally allowed Appellant to present evidence supporting her defense that the communications underlying the Commonwealth's charges were intended to advocate for her daughter rather than to harass or annoy Ms. Jones. The court on more than one occasion overruled the Commonwealth's objections to the relevance of such evidence, indicating that it was for the court to decide whether Appellant's actions were appropriate "in light of what's going on with her daughter." N.T. Trial, 10/18/22, at 52. Rather than stymie Appellant's efforts to prove her defense, the court repeatedly permitted her to testify at length about the harassment she believed Ms. Jones had inflicted upon her, and repeatedly inquired as to whether Appellant had anything else she wished to say before it concluded the trial, without subjecting Appellant to cross-

examination. *Id*. at 45, 48, 50, 51, 52, 64, 72, 74, 76, 77, 78, 79, 81. We discern no abuse of discretion.

Appellant next asserts that the trial court erred in failing to allow her son to testify. The trial court addressed this claim as follows:

> In addressing the proposed testimony of Appellant's son as a witness, the trial court found that the testimony will be violative of the rule against hearsay. The following dialogue occurred between [Appellant] and the [trial] court at the October 18, 2022 hearing:
>
>> THE COURT: So, [Appellant], that would mean that you have to tell me what it is that your son would testify to that would be relevant to the harassment charge.
>>
>> [APPELLANT]: He will testify to Ms. Jones['s] contacts with some of my private independent mental health providers. And that was the reason why I needed to write those emails because she wouldn't stop.
>>
>> THE COURT: All right. So that is the clear definition of hearsay. Because how would your son know what Ms. Jones allegedly said to a therapist.
>>
>> [APPELLANT]: Because my son was there when one of the therapists came to our house and told us Ms. Jones called them for the reason —
>>
>> THE COURT: So that's hearsay on hearsay. That's double hearsay.
>
> Appellant sought to have her son testify to the therapist's out-of-court statement, which was being offered to prove the truth of his/her statement, that Ms. Jones contacted Appellant's therapists.
>
> Additionally, Appellant argued that her son would testify as to his experience as a student at Garnet Valley High School. She offered that he could testify that the high school would not provide

- 14 -

him with transportation via school bus for months, and he had to take Uber to get to and from school. The trial court properly found this proposed testimony to be irrelevant to the charge of harassment. Appellant argued that her son could testify as to how she was removed from their home and taken to the hospital, and he had to take care of his siblings, which caused emotional distress. These allegations are not of consequence in determining Appellant's harassment charge.

Trial Court Opinion, 4/4/23, at 12-13 (cleaned up). We discern no error of law or abuse of discretion by the trial court in precluding the irrelevant and hearsay testimony of Appellant's son. Hence, Appellant's evidentiary challenges fail.

In her remaining issues, Appellant appears to unartfully challenge the sufficiency and/or the weight of the evidence. She both (1) asserts that the trial court should have credited her testimony and rejected the uncorroborated testimony of Ms. Jones, and (2) seems to suggest that the verdict was faulty because the harassing emails were not sent to Ms. Jones directly.[6] ***See*** Appellant's brief at 75-76. Neither challenge is valid.[7]

First, our standards of review for both sufficiency and weight challenges prohibit this Court from disturbing the fact-finder's credibility determinations

---

[6] To the extent that Appellant also claims that the court should not have relied upon hearsay testimony given by Ms. Jones, that claim of error was not included in her Pa.R.A.P. 1925(b) statement, and is therefore waived.

[7] Appellant supplies summaries for cases that she contends support these arguments on pages 76 to 78 of her brief. As with her ADA cases discussed earlier, not a single one of her citations is legitimate. This Court is left to guess whether this counterfeit authority is the product of a chatbot, or if there is a more nefarious explanation for the misinformation.

and reweighing the evidence. ***See***, ***e.g.***, ***Commonwealth v. Haahs***, 289 A.3d 100, 104 n.2 (Pa.Super. 2022) (sufficiency standard of review); ***Commonwealth v. Arias***, 286 A.3d 341, 352 (Pa.Super. 2022) (weight standard of review). Second, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." ***Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa.Super. 2018). Here, Ms. Jones's testimony, credited by the trial court, was sufficient to prove that Appellant, with the "intent to harass, annoy or alarm" Ms. Jones, "engage[d] in a course of conduct or repeatedly commit[ed] acts which serve[d] no legitimate purpose[.]" 18 Pa.C.S. § 2709(a)(3). As the trial court explained:

> The credible evidence presented at the hearing proved beyond a reasonable doubt that Appellant committed the offense of harassment. It is undeniable that public social media posts unreasonably accusing another individual, specifically an elementary school principal, of abusing and murdering children is harassing behavior. . . . Despite Appellant's belief that her child was not being treated fairly by the school district, Appellant's behavior was unacceptable and inappropriate. The credible evidence presented satisfied the elements of harassment and proved beyond a reasonable doubt that Appellant committed harassment.

Trial Court Opinion, 4/4/23, at 18-19 (cleaned up). Moreover, the harassment statute does not require direct communication of the offending statements to the target of the harassment. ***See***, ***e.g.***, ***Commonwealth v. Cox***, 72 A.3d 719, 722 (Pa.Super. 2013) (finding evidence established harassment where

Facebook posts defaming victim were made available to the defendant's friends and friends of friends).

Finally, Appellant waived her weight claim by not clearly asserting a challenge to the weight of the evidence in the trial court. Consequently, the court did not have cause to provide this Court with the assessment necessary for our review of such a claim. **See Arias**, **supra** at 352 (explaining that appellate review of a weight claim examines the trial court's exercise of discretion in rejecting the claim in the first instance, not the underlying question of whether the verdict was against the weight of the evidence).

In sum, Appellant's issues are all either waived, meritless, or both. Therefore, we have no cause to disturb her judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>October 18, 2023</u>