IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia                  :
                                      :   No.  1738 C.D. 2018
              v.                      :
                                      :   Submitted:  November 12, 2019
Shih Tai Pien,                        :
              Appellant               :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE McCULLOUGH                          FILED:  December 20, 2019


        Shih Tai Pien (Pien) appeals from the December 31, 2018 order of the Court of Common Pleas of Philadelphia County (trial court) granting a permanent injunction requiring Pien to remediate violations of Chapter 3, Subcode A of the Philadelphia Building Construction and Occupancy Code, which is known as the Administrative Code, and violations of the Philadelphia Fire Code (Fire Code),[1] and imposing a $7,500 fine.


## Background

        On December 11, 2017, the City of Philadelphia's (City) Department of Licenses and Inspections (L&I) issued an initial notice of violation to Pien regarding alleged violations of the Philadelphia Fire and Administrative Codes occurring at 1124 Walnut Street, Philadelphia (Property).   (Reproduced Record (R.R.) at 33a.)

---

[1] The Philadelphia Administrative Code and Fire Code are both found in Title 4 of The Philadelphia Code.

Specifically, the notice cited Pien for failure to obtain a registration permit and certificate of occupancy for the Property, missing swivel fittings and caps on the exterior hose connections for the fire suppression system, "communication failure" on the fire alarm system, and lack of a fire alarm and fire suppression system certification. *Id.* L&I re-inspected the Property a month later. Finding that the violations had not been corrected, L&I issued a final warning notice. (R.R. at 37a-38a.) The final warning stated that if the violations were not corrected, the City would file an enforcement action in the trial court.

On June 7, 2018, the City filed a complaint in equity against Pien in the trial court. Pien accepted personal service of the complaint on July 31, 2018. (Original Record (O.R.) at Item No. 8.) Pien did not file an answer to the complaint and initially did not retain counsel. The trial court held a hearing on September 13, 2018. At that hearing, an L&I inspector testified that Pien had not obtained the necessary registration permits and certificates of occupancy for the Property. (R.R. at 41a.) Pien stated that the tenants at the Property had been in place for a number of years; however, she acknowledged that she still needed to obtain the necessary permits. (R.R. at 41a-42a.)

At the hearing, Pien provided a packet of materials to the City regarding the fire alarm and fire suppression system certifications. (R.R. at 42a-43a.) The City accepted the fire suppression certification, but did not accept the fire alarm certification. *Id.* At the close of the hearing, the trial court stated that it would provide Pien an additional 60 days to remedy the violations. (R.R. at 43a.) Thereafter, the trial court issued an order requiring Pien to obtain a corrected fire alarm certification, repair the "Fire Department connection," and obtain registration permits and certificates of occupancy for the second, third, and fourth floors of the Property by November 9, 2018. (O.R. at Item No. 9.)

2

A subsequent hearing was held on November 8, 2018. The City's attorney stated that he and the L&I inspector spoke with Pien and that he thought she understood "very little of what [they were] saying." (R.R. at 46a.) Accordingly, the City's attorney requested a Mandarin interpreter and asked to continue the hearing in order to obtain an interpreter. *Id.* The trial court continued the hearing until December 20, 2018, so that an interpreter could be present. *Id.*

At the December 20, 2018 hearing, Pien was provided with an interpreter. (R.R. at 49a.) The L&I inspector testified that he last inspected the Property on December 17, 2018. (R.R. at 50a.) The inspector noted that the stand pipe and automatic sprinkler were missing Fire Department connections and that there was a "communication failure" for the fire alarm system. (R.R. at 51a.) The inspector also testified that the second, third, and fourth floors were illegally occupied because they lacked certificates of occupancy. *Id.*

While Pien introduced documentation in an attempt to show that the problems were fixed, the trial court concluded the documentation was insufficient to establish that Pien resolved the outstanding violations of the Property. (R.R. at 52a.) Pien stated that she wished to hire someone to fix the problems. *Id.* The trial court noted that it had already been a year since the notice of the violations, the violations were still outstanding, and Pien was afforded additional time to remedy the violations. *Id.* The trial court stated that Pien had provided no evidence to refute the evidence of the violations. *Id.* The trial court decided to allow Pien and her tenants until December 31, 2018, to vacate the Property.

Pien testified that she needed a month to give her tenants notice. *Id.* The trial court stated that it would only give her until December 31, 2018, to vacate the Property because the issues had been longstanding. Pien asked if it would be possible

to have a company fix the system right away. *Id.* The trial court found that Pien had failed to produce the necessary documents for the Property to remain inhabited, but stated that to the extent she made the necessary repairs, she could ask the City to do an investigation and inspection and the information could be provided to the court. (R.R. at 53a.) The trial court concluded that if Pien obtained the necessary repairs and certificates of occupancy by December 31, 2018, she would not have to vacate the Property. *Id.* The trial court also determined that a fine was appropriate, but that the fine would be conditional in case Pien managed to correct the violations by December 31, 2018. *Id.* Accordingly, following the hearing, the trial court issued an order and permanent injunction requiring Pien to obtain registration permits and certificates of occupancy for the Property, correct the Fire Department connection, properly install all sprinkler heads, correct all other violations listed in the initial notice of violation, and ensure that L&I had marked the violations as "complied." (R.R. at 57a.) The order further deemed the averments in the City's complaint admitted due to Pien's failure to file an answer. The trial court also imposed a fine of $7,500, conditioned on Pien not remedying the violations by December 31, 2018. *Id.*

The day after the injunction was entered, Pien retained counsel. On December 24, 2018, her counsel filed a motion for reconsideration and for extraordinary relief, seeking to vacate the order. While that motion was pending, Pien's counsel filed an emergency motion to stay. The trial court denied both motions. Pien's counsel also filed a motion for reconsideration of the order denying the motion to stay, which was denied. Subsequently, the trial court issued an amended order on December 31, 2018, imposing a fine of $7,500, because Pien failed to remedy the violations, and authorizing the City to require occupants at the Property to vacate and cease operations. The amended order also relisted the matter for January 17, 2019, for the court to

4

determine if the terms of its order had been violated and/or if the property remained in violation of the Philadelphia Code. Pien then appealed the December 31, 2018 order.[2] The trial court held a brief hearing on January 17, 2019, at which it noted that an appeal was pending; therefore, the trial court refused to further consider the matter until the appeal had concluded.

In its Rule 1925(b) statement of errors complained of on appeal, Pien's counsel argued, *inter alia*, that the trial court violated Pien's due process rights by (1) issuing an 11-day compliance deadline that was impossible to meet over a long weekend; (2) failing to provide a hearing between the December 20, 2018 hearing and the December 31, 2018 deadline for the court to monitor compliance with its order; and (3) deeming the averments in the City's complaint in equity as admitted before Pien had appeared in court with an interpreter.

In its Rule 1925(a) opinion, the trial court observed that Pien's claim that she was only given 11 days to fix the outstanding violations was "patently false." (Trial court op. at 5.) The court recognized that the initial notices of violation were issued in December 2017 and January 2018 and, thus, Pien had an entire year to bring the subject property into compliance with The Philadelphia Code. The court also stated that at the September 13, 2018 hearing, Pien was given an additional 60 days to come into full compliance. The trial court also explained that the rule of law was not suspended during holiday weekends and, in fact, Pien had full access to the court during the time complained of, as evidenced by the number of emergency motions filed. *Id.*

---

[2] After filing her appeal, Pien filed an emergency motion to stay with this Court, asking us to stay the trial court's order and allow the tenants back in the Property. The motion was denied on January 11, 2019. Subsequently, Pien filed an emergency motion to stay and/or writ of mandamus with this Court, requesting that we order the trial court to hold a hearing because Pien had resolved most of the violations. However, we also denied that motion.

Additionally, the trial court determined that its decision to not conduct a hearing between the December 20, 2018 hearing and the December 31, 2018 compliance deadline did not violate Pien's due process rights. *Id.* The trial court stated that the purpose of the December 20, 2018 hearing was to ensure that the violations at the Property had been corrected and that, despite Pien's earlier assurances that the necessary repairs would be made, Pien had failed to address the Fire Code violations as of that date. The trial court concluded that Pien had continued to have tenants occupy the Property, "which without the proper [c]ertificate of [o]ccupancy resulted in the [c]ourt ordering the [P]roperty to be vacated on December 31, 2018 based on [Pien's] failure to bring the [P]roperty into compliance within a year." *Id.* at 5-6.

The trial court further concluded that it had not violated Pien's due process rights by deeming the averments in the complaint as admitted before Pien appeared in court with an interpreter. Specifically, the trial court found as follows:

> In prior hearings [Pien] fully engaged in the full discussions at the Bar of the Court without the use of an interpreter. [Pien] was able to ask questions and provide responses to questions posed to her during each hearing. Her interactions with the [i]nspectors from [L&I], the Assistant City Solicitor and the [c]ourt gave no indication that she required an interpreter. [Pien] never asked for an interpreter at any of the hearings. It was the Assistant City Solicitor who, in an abundance of caution, requested the use of the interpreter because [Pien] maintained that she did not understand the discussions of the City when the issue of outstanding fines were posed to [Pien].

*Id.* at 6.

**Discussion**

On appeal,[3] Pien argues that the trial court violated her due process rights by (1) deeming the averments in the City's complaint as admitted before Pien had appeared in court with an interpreter; (2) issuing an 11-day deadline over a holiday weekend for Pien to obtain a certificate of occupancy for the Property; and (3) failing to provide a hearing between the December 20, 2018 hearing and the December 31, 2018 deadline for the court to monitor compliance with its order. Pien also argues that the trial court lacked subject matter jurisdiction to hear all aspects of the case and that the trial court's refusal to hear any aspect of the case while it is on appeal demonstrates sufficient bias such that, on remand, a new judge should be assigned.

We first address whether the trial court violated Pien's due process rights in deeming the averments in the complaint admitted. Pien argues that although she has resided in the United States for a number of years, she was born in China and her comprehension of the English language is minimal. Pien contends that at the September 13, 2018 hearing, she mistook the trial court's request that she question the L&I inspector about the violations. Pien maintains that the trial court erred in finding that she was able to engage in discussion, ask questions, and provide responses in prior hearings. Pien also alleges that contrary to the trial court's finding that Pien never requested an interpreter, Pien, in fact, requested an interpreter at the November 8, 2018 hearing.

Given that the December 20, 2018 hearing was the first instance in which Pien appeared in court with an interpreter and Pien demonstrated, on that date, that she

---

[3] This Court's review of a grant of a permanent injunction is limited to determining whether the trial court abused its discretion or committed an error of law. *Buffalo Township v. Jones*, 813 A.2d 659, 664 n.4 (Pa. 2002). "Ultimately, the grant or denial of a permanent injunction will turn on whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law." *Id.*

7

was attempting to remedy the violations, Pien argues that the trial court erred in deeming the averments in the complaint admitted for failure to file an answer and in granting a permanent injunction. Pien asserts that a litigant has a due process right to understand a proceeding and, therefore, must be provided with a translator when necessary. Pien contends that "[t]o default a Defendant, even in an equitable trial, who has made an on the record request for an interpreter, before that Defendant has been apprised by that interpreter of the actual contents of the claim against them offends basic notions of due process." (Pien's Br. at 12.) Pien also maintains that even though the complaint had been physically given to her and allowed her to appear in court, she did not understand the nature of the violations against her or that she was required to file an answer to the complaint. *Id.*

Conversely, the City contends that because Pien did not raise any due process arguments before the trial court, they are waived on appeal. The City also argues that the trial court was not obligated to appoint an interpreter earlier where Pien did not request one and did not appear to need one. The City observes that Pien understood the earlier proceedings well enough to actively participate and to engage with the trial court and L&I in English. It also notes that when Pien finally did request an interpreter, the trial court readily granted the request. The City maintains that the record supports the trial court's credibility determination that a language barrier was not the cause of Pien's noncompliance and that she understood the violations.

The City also argues that although Pien faults the trial court for not appointing an interpreter before the December 20, 2018 hearing, it is typically the party's obligation to request an interpreter if one is needed, the trial court is not required to *sua sponte* appoint an interpreter whenever a party appears to speak English as a second language, and the trial court's choice to do so, or not, falls squarely within its

8

discretion. The City alleges that a court does not abuse its discretion where a party has not requested an interpreter and the party appears to understand the proceedings well enough that any need for an interpreter is not readily apparent. The City observes that Pien did not request an interpreter at the September hearing and understood the court notices and proceedings well enough to appear at the appointed times.

The "constitutionally protected rights afforded by due process . . . include[] the right to be heard which, in certain circumstances, include[s] the right to assistance from an interpreter during the proceedings itself." *D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 720 (Pa. Cmwlth. 2010); *see also Commonwealth v. Wallace*, 641 A.2d 321, 325 (Pa. Super. 1994) ("A defendant's ability to use an interpreter encompasses numerous fundamental rights. The failure to understand the proceedings may deny him his right to confront witnesses against him, his right to consult with an attorney, or his right to be present at his own trial."). However, "[t]he concept of due process is a flexible one and imposes only such procedural safeguards as the situation warrants." *D.Z.*, 2 A.3d at 721. Therefore, "[d]emonstrable prejudice is a key factor in assessing whether procedural due process was denied." *Id.* The mere demonstration of a potential procedural error, without a showing of resulting harm or prejudice, is not a sufficient reason to overturn a lower tribunal's decision. *Id.* at 719.

"The decision to use an interpreter rests in the sound discretion of the trial judge." *Commonwealth v. Pana*, 364 A.2d 895, 898 (Pa. 1976). Such a decision is discretionary "because numerous factors such as the complexity of the issues and testimony and language ability of defendant must be taken into consideration." *Id.* Therefore, "we review a trial court's decision to use or not use an interpreter for abuse of discretion." *D.Z.*, 2 A.3d at 722. This is a high standard, which requires that we

abide by a trial court's decision absent "bad faith, fraud, capricious action or abuse of power." *Id.*

Due to the important rights involved, the trial court is required to "consider all relevant factors in its initial determination of need. If it becomes apparent that an interpreter is necessary during the trial, the court should, on its own motion or on motion of a party, make an interpreter available." *Pana*, 364 A.2d at 898. Accordingly, "where the court is put on notice that a defendant has difficulty understanding or speaking the English language, it must make unmistakably clear to him that he has a right to have a competent translator assist him." *In re Garcia*, 984 A.2d 506, 511 (Pa. Super. 2009); *see also* Section 4412 of the Judicial Code, 42 Pa.C.S. §4412 (providing that "[u]pon request or *sua sponte*, if the presiding judicial officer determines that a principal party in interest . . . has a limited ability to speak or understand English, then a certified interpreter shall be appointed"). However, where "no request for an interpreter has been made and the defendant appears to comprehend the nature of the proceedings and the charges against him, the trial court does not abuse its discretion by proceeding without appointing an interpreter." *In re Garcia*, 984 A.2d at 511.

Here, the trial court did not abuse its discretion in deeming the averments in the complaint admitted, due to Pien's failure to answer the complaint, following the first hearing at which Pien appeared with an interpreter. Pien argues that she clearly did not understand the proceedings at the September 13, 2018 hearing, such that the trial court should have appointed an interpreter. At that hearing, after the L&I inspector testified that the Property lacked the necessary certificates of occupancy, Pien was asked if she had questions for the inspector. (R.R. at 41a.) Pien replied, "[F]irst floor, florist floor, there five years, never changed. Second floor, ten years, ten years been

10

there. Fourth floor been there nine years. Third floor apartment, almost ten years never changed." *Id.* The trial court explained to her that she still needed to obtain the necessary certificates of occupancy. *Id.* Pien replied, "I first—the florist is a business. One there is an apartment." (R.R. at 42a.) The trial court asked if she had documentation to show that she was in good standing with respect to the certificates of occupancy, and explained that when a business changes, a landowner must obtain new certificates of occupancy. *Id.* Pien responded, "[B]ut ten years it has been." *Id.* The court then explained that it did not matter how long the business had been there because she had never obtained new certificates of occupancy when the businesses changed. *Id.*

At the hearing, Pien also provided a packet of documents, which included a sprinkler certification that was accepted by the City. (R.R. at 43a.) The court explained to Pien that she still needed to obtain certificates of occupancy for the second, third, and fourth floors of the Property, as well as a fire alarm certification and fire connection. *Id.* The court then advised Pien that although the City was not seeking a statutory fine at that time, she needed to be mindful that if she did not make progress in remedying the outstanding violations the court could impose a fine. The court stated, "I will ask that you work towards getting the necessary documentation." *Id.* Pien replied, "I will get some time?" *Id.* Accordingly, the court granted her an additional 60 days to fix the violations and set a subsequent hearing date of November 8, 2018.

At the November 8, 2018 hearing, the assistant City solicitor requested an interpreter for Pien at the beginning of the hearing. The assistant City solicitor stated that he thought Pien understood very little of what he said and that he "tried to make it crystal clear that the nature of the violations are very serious" because Pien did not have certificates of occupancy, and there were sprinklers missing. (R.R. at 46a.) The

11

assistant City solicitor stated that he could not "stress enough that she need[ed] to get an individual to help her, some sort of assistance." *Id.* He noted that although he tried to explain the best he could, he was asking for a Mandarin interpreter "because, ultimately, at the next hearing, [he might] request to vacate the building." *Id.* The trial court ordered an interpreter for December 20, 2018. Pien then explained, in English, that her mother had just passed away, that she needed to visit China, and that she would not return until the middle of December. *Id.* She also testified in English that she needed "to call somebody to fix the problem." *Id.* The trial court stated, "You can work that out with the City in the meantime, but you will come back to court on December 20th. We'll have an interpreter." *Id.* At that point, the assistant City solicitor observed that if Pien understood the court, they could conduct the hearing then. The trial court stated, "You addressed the [c]ourt. You're not having a problem addressing the [c]ourt. Do you need an interpreter?" Pien responded, "Yes." *Id.*

At the December 20, 2018 hearing, Pien appeared with an interpreter. Following that hearing, the trial court deemed the unanswered averments in the complaint admitted and granted a permanent injunction.

The trial court did not abuse its discretion in either not appointing an interpreter before the December 20, 2018 hearing or deeming the averments in the complaint admitted. First, it is notable that Pien received the initial notices of violation in December 2017 and the City's complaint in July 2018. As required by Rule 1018.1 of the Pennsylvania Rules of Civil Procedure, Pa.R.C.P. No. 1018.1, the complaint contained a "notice to defend," advising Pien that she was required to respond to the complaint within 20 days of service. At no time during the period between receiving the notices of violation and complaint and the court granting the permanent injunction—one year in the case of the notices and five months in the case of the

12

complaint—did Pien indicate that she did not understand the nature of the violations or what was contained in the complaint. Moreover, Pien displayed a working knowledge of the English language because she understood the trial court's directives to appear in court on four separate occasions between the filing of the complaint and the court's granting of the permanent injunction on December 20, 2018.

Second, at the September 13, 2018 hearing, Pien appears to have had a basic understanding of the violations. In fact, Pien remedied one of the violations at that hearing by providing a sprinkler certification to the City. Pien also recognized that she needed to provide additional documentation to the City. While the September 13, 2018 transcript appears to demonstrate that Pien was confused about the legal necessity of obtaining certificates of occupancy given that the businesses on the Property had already existed for several years, contrary to Pien's assertion the transcript does not demonstrate that Pien did not understand the language spoken at the hearings or that "[s]he mistook the [c]ourt's request that she question the [i]nspector about the violations allegedly found for a request that she detail the tenants." (Pien's Br. at 8.)

Third, prior to being encouraged to do so by the City at the November 8, 2018 hearing, Pien never requested an interpreter. Once the City requested an interpreter at the November 8, 2018 hearing, the trial court immediately granted the request. After granting the request, Pien continued to address the court in English about her upcoming trip to China and intent to hire someone to fix the violations.

The trial court found that at the prior hearings, Pien engaged in discussions with the bar and court in a meaningful fashion without the use of an interpreter, that she was able to ask questions and provide responses posed to her, that her interactions gave no indication that she required an interpreter, and that she never requested an interpreter. (Trial court op. at 6.) Given that there is support in the record for these

13

findings and there is no evidence in the record that Pien ever indicated that she could not understand the complaint or notices of violation, or needed an interpreter to understand such documents, the trial court did not abuse its discretion in deeming the averments to the complaint admitted due to Pien's failure to respond, following the December 20, 2018 hearing. *See, e.g.*, *In re Garcia*, 984 A.2d at 512 (holding that where party did not request an interpreter and appeared to understand nature of proceedings, trial court did not abuse discretion in not appointing interpreter for him); *Wallace*, 641 A.2d at 327 (holding that where necessity of an interpreter was not readily apparent and party never requested an interpreter, trial court did not abuse its discretion in failing to *sua sponte* appoint an interpreter).

Further, given the lack of record evidence that Pien was unable to understand the complaint or that either appointing an interpreter earlier or delaying the grant of the permanent injunction would have enabled Pien to answer the complaint, Pien has not proven "demonstrable prejudice" such that we could conclude she was denied due process. *D.Z.*, 2 A.3d at 722. In considering Pien's assertions, we remain mindful of the axiom that "any lay person choosing to represent [herself] in a legal proceeding must, to some reasonable extent, assume the risk that [her] lack of expertise and legal training will prove [her] undoing." *Id.* at 720. Here, Pien's failure to respond to the City's complaint stemmed more from her decision to proceed *pro se*, rather than a failure to understand English or from not having an interpreter appointed earlier.

Next, we address whether the trial court violated Pien's due process rights by imposing an 11-day deadline to obtain the necessary certificates of occupancy. Pien contends that the 11-day deadline was impossible given that it fell on a long weekend. She argues that she brought evidence of the work she was doing to bring the Property into compliance to every hearing and did not fully understand the permits she needed

14

to obtain.  Pien relies on *Mathews v. Eldridge*, 424 U.S. 319 (1976), which lays out the basic parameters of a due process analysis, to argue that the trial court violated her due process rights in granting a permanent injunction.  Pien maintains that, rather than grant a permanent injunction, which had the effect of displacing the tenants, the trial court should have granted a temporary or partial certificate of occupancy.

In contrast, the City contends that Pien's characterization of an impossible 11-day deadline is belied by the record.  Rather than only having 11 days to remedy the violation, the City alleges she was served with the initial notice in December 2017, was provided an extra 60 days in September, and an additional month in November.  The City argues that The Philadelphia Code authorizes it to *immediately* issue cease operations orders whenever a property is illegally occupied but, here, Pien had a year to fix the violations before an injunction was issued.  The City also notes that the Philadelphia Administrative Code authorizes L&I to *immediately* issue a cease operations order where a property lacks adequate permits and that the 11-day deadline imposed by the trial court was in reality a grace period to allow Pien's tenants extra time to vacate the Property.  The City contends that the trial court met the requirements for granting a permanent injunction.

A procedural due process analysis generally requires an analysis of three factors including (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards";  and (3) the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathew*s, 424 U.S. at 335; *City of Philadelphia v. Perfetti*, 119 A.3d 396, 403, (Pa. Cmwlth. 2015).

15

Here, Pien's private interest, *i.e.*, the ownership and enjoyment of her Property, was obviously affected by the permanent injunction. However, given the circumstances of what occurred, there was an insignificant risk of an erroneous deprivation of Pien's interest in her Property. First, while Pien argues that she only had 11 days to correct the violations, Pien initially received notice of the violations over a year before the permanent injunction was granted and was served with the complaint 5 months before the permanent injunction was granted. This timeframe limited any risk of an erroneous deprivation of Pien's property interest. Second, the trial court's decision to hold three hearings before granting the permanent injunction also reduced the risk of any erroneous deprivation of property rights.

Moreover, based on the serious nature of the violations involved, there was limited value in allowing additional time to remedy the violations before granting a permanent injunction. Finally, the City has significant health and safety interests in ensuring compliance with its certificate of occupancy and Fire Code ordinances. Requiring additional time before granting a permanent injunction for violations of such ordinances would frustrate the City's desire to ensure compliance with its ordinances and could negatively impact the health and safety of its residents.

Further, the party seeking a permanent injunction "must establish that (1) the right to relief is clear, (2) there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and (3) greater injury will result in refusing rather than granting the relief requested." *Big Bass Lake Community Association v. Warren*, 23 A.3d 619, 626 (Pa. Cmwlth. 2011). The case for a permanent injunction "must be made by a very strong showing, one stronger than that required for a restraining-type injunction." *Id.* As pertains to the instant matter, section A-701.1 of the Administrative Code requires certificates of occupancy prior to occupancy of a

16

building, including whenever a change of occupancy occurs. Philadelphia Administrative Code, §A-701.1. Further, section A-505.1 of the Administrative Code provides that L&I and the Philadelphia Fire Department are

> authorized to issue Cease Operation Orders directing that use and other activities cease immediately and that the premises be vacated pending compliance with such orders whenever . . . [a]ny occupancy, use, or other activity is being performed in or on any building . . . . without required Zoning and/or Use Registration permits, Certificate of Occupancy or other permits.

Philadelphia Administrative Code, §A-505.1. "Upon notice of the Cease Operations Order all occupancy, use or other activity shall stop immediately and the premises shall be vacated of all employees, patrons and occupants until there has been compliance with the terms of the Cease Operations Order." Section A-505.3 of the Administrative Code, Philadelphia Administrative Code, §A-505.3.

Since the Administrative Code authorizes a Cease Operations Order, the City met the first element of the permanent injunction standard, *i.e.*, a clear right to relief. The City also satisfied the second element as the continuing violation of the Administrative Code and Fire Code constitutes an irreparable harm, which means there is an urgent necessity to remedy such violations. *See, e.g.*, *Peters Township v. Russell*, 121 A.3d 1147, 1152 (Pa. Cmwlth. 2015) (holding that a violation of an ordinance constitutes an irreparable harm that justifies the granting of an injunction); *Pennsylvania Central Realty Investment, Inc. v. Township of Middlesex*, 566 A.2d 931, 934 (Pa. Cmwlth. 1989) (same). Finally, the City met the third element given that there are substantial health and safety risks resulting from the Property's lack of a fire communication link, fire hose connector, and certificates of occupancy certifying the Property as safe for its occupants. Due to these risks, there was a strong likelihood that

17

greater injury would result in refusing rather than granting the relief requested. Accordingly, because the trial court's 11-day deadline occurred after Pien had notice of and chose not to remedy the violations for over a year and the trial court met the standard for issuing a permanent injunction, the trial court did not violate Pien's due process rights in imposing the deadline.[4]

Next, we address whether the trial court had subject matter jurisdiction to rule on this particular matter. Pien contends that the procedures and ordinances relied on by L&I in the trial court impermissibly mixed criminal law and equity, such that the trial court lacked subject matter jurisdiction to rule on them. Pien maintains that a court of equity must decline jurisdiction in criminal matters unless there exists no adequate remedy at law. In support of its argument, Pien cites to a 1956 version of The Philadelphia Code that permitted a penalty of imprisonment for violations of the Code. Accordingly, Pien alleges that the penalty provisions under The Philadelphia Code are "criminal statutes" and that proper jurisdiction lied with a magisterial district judge. (Pien's Br. at 21.) Pien acknowledges, however, that 1995 amendments to The Philadelphia Code eliminated the imprisonment section.

---

[4] Similarly, Pien maintains that the trial court violated her due process rights in not holding an additional hearing between the December 20, 2018 hearing and the December 31, 2018 deadline in order to monitor compliance with its order. Pien argues that due process required the trial court to conduct another hearing prior to granting the permanent injunction, given that Pien may well have corrected the violations before the deadline. Due to the trial court's failure to hold a hearing, Pien was forced to seek an emergency stay.

Like our resolution of the preceding issue, because Pien had over a year to remedy the violations at the Property, and failed to do so, the trial court did not violate Pien's due process rights in not conducting another hearing in order to measure compliance before granting the amended order and permanent injunction on December 31, 2018. In fact, at the December 20, 2018 hearing, Pien stated, on the record, that she would have all of the violations remedied by the December 31, 2018 deadline (R.R. at 52a-54a); however, there is no evidence that Pien did so.

18

In contrast, the City argues that it is explicitly authorized to bring enforcement matters in courts of common pleas. The City also asserts that this case is a civil code enforcement matter and not a criminal matter. Specifically, the City contends that The Philadelphia Code provisions at issue only result in fines in the event of a violation and do not provide for imprisonment.

Section 2 of the Municipal Housing Ordinance Authorization Law[5] provides that when a building is used in violation of an ordinance, the corporate authorities of any city of the first class "may institute appropriate actions or proceedings at law or in equity to prevent and restrain" such "use and to restrain, correct, or abate such violation, and to prevent the occupancy of said building." 53 P.S. §4102. It is also well-established that "proceedings charging violations of a municipal ordinance *which provides for imprisonment upon conviction or failure to [] pay a fine or penalty* are criminal proceedings governed by the Pennsylvania Rules of Criminal Procedure." *Town of McCandless v. Bellisario*, 709 A.2d 379, 381 (Pa. 1998) (emphasis in original). However, "the same is not true for municipal ordinances *that do not provide for imprisonment upon conviction or failure to pay a fine or penalty*, which by definition are not Penal Laws" and, therefore, are not included within the definition of criminal proceedings under the Rules of Criminal Procedure. *Bellisario*, 709 A.2d at 381 (emphasis in original); *Lower Southampton Township v. Dixon*, 756 A.2d 147, 151 (Pa. Cmwlth. 2000). Thus, in municipal ordinance enforcement actions where imprisonment is not a remedy for a conviction or failure to pay a fine, the Rules of Criminal Procedure are inapplicable; instead, the Rules of Civil Procedure apply to such actions. *Dixon*, 756 A.2d at 151; *see also Commonwealth v. Whiteford*, 884 A.2d 364, 367 (Pa. Cmwlth. 2005) (holding that where an ordinance did not provide for

---

[5] Act of April 14, 1937, P.L. 313, *as amended*, 53 P.S. §4102.

19

imprisonment in lieu of payment of a fine, the violations charged were civil, rather than criminal, in nature).

Here, Pien was cited for violating section A-701.1 of the Administrative Code and sections F-901.6 and F-915.1 of the Fire Code. *See* R.R. at 34a-35a. Pursuant to the Administrative Code and The Philadelphia Code, violators of these sections are only subject to fines and there is no possibility of imprisonment. *See* Sections A-601.1-601.3 of the Philadelphia Administrative Code, Administrative Code, §§A-601.1-601.3; Sections 1-109(1)-1.109(3) of The Philadelphia Code, The Philadelphia Code, §§ 1-109(1)-1.109(3). Because the ordinances that Pien was found to have violated do not provide for imprisonment, such ordinances are civil, rather than criminal in nature. Accordingly, the trial court had subject matter jurisdiction to both enforce the ordinances at issue and grant an injunction.

Finally, we address whether the trial court should have recused itself. Pien observes that in the January 17, 2019 and February 28, 2019 hearings, the trial court refused to hear anything about the case because it had already been appealed to this Court. Pien argues that "[t]he lower [c]ourt's refusal to hear any matter concerning this case has been obstinate and, frankly, somewhat unbecoming of a Judge of the [c]ourt of [c]ommon pleas." (Pien's Br. at 31.) Pien also criticizes the trial court for not including any case or statutory citations in its Rule 1925(a) opinion and for not considering the evidence introduced by Pien, *pro se,* or by Pien's counsel in his post-trial motions. Pien contends that the only conclusion that can be drawn is that the trial judge is "incredibly offended" that she has been appealed and has "an antagonistic view of counsel who appeal her in circumstances which imply she has violated the due process rights of litigants." (Pien's Br. at 32.) Therefore, Pien requests a different judge on remand.

20

In opposition, the City argues that Pien is precluded from making a request to preclude a trial court judge for the first time on appeal following an unfavorable result, but rather, was required to raise her objection at the earliest possible time. The City also maintains that Pien has not met her heavy burden of demonstrating evidence of actual bias, prejudice, or unfairness sufficient to raise a substantial doubt regarding the trial judge's ability to preside impartially.

Initially, we note that under Pennsylvania law it is incumbent upon a party "seeking recusal or disqualification to raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." *Lomas v. Kravitz*, 170 A.3d 380, 389 (Pa. 2017); *see also In re Appeal of Springfield Hospital Folio No. 42-00-06625-01*, 179 A.3d 632, 637 (Pa. Cmwlth. 2018) (same). The "earliest possible moment" occurs as soon as "the party knows of the facts that form the basis for a motion to recuse." *Lomas*, 170 A.3d at 390. Thus, "[i]f the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived." *Id.*

Here, Pien primarily faults the trial court for refusing to hear any matter concerning the case while it is being appealed to this Court. Pien was aware of the facts forming the basis for her motion to recuse at the January 17, 2019 and February 28, 2019 hearings when the trial court refused to take further action on the case, yet, never filed a motion to recuse and only raised the issue for the first time in her brief filed with this court. Because Pien did not present a motion to recuse immediately after the January and February 2019 hearings the issue is likely time-barred and waived.

However, even if the issue were not waived, Pien has failed to allege facts that would necessitate the trial judge's recusal. "The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias,

prejudice, or unfairness necessitating recusal." *Commonwealth v. Druce*, 848 A.2d 104, 108 (Pa. 2004); *see also Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 489 A.2d 1291, 1301 (Pa. 1985); *Springfield Hospital*, 179 A.3d at 637. "Adverse rulings alone do not, however, establish the requisite bias warranting recusal, especially where the rulings are legally proper." *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 90 (Pa. 1998).

Pien argues that the trial judge was biased for refusing to rule on any matters concerning the case while it was being appealed. However, Rule 1701(a) of the Pennsylvania Rules of Appellate Procedure provides that "[e]xcept as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court . . . may no longer proceed further in the matter." Pa.R.A.P. 1701(a). Moreover, Rule 1701(b) of the Rules of Appellate Procedure, titled "Authority of a trial court or agency after appeal," provides, in part, as follows:

> After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit *may*:
>
> (1) Take such action as may be necessary to preserve the status quo . . . and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.
>
> (2) *Enforce any order entered in the matter*, unless the effect of the order has been superseded as prescribed in this chapter.

Pa.R.A.P. 1701(b) (emphasis added). Because a court's decision to enforce an order entered in a matter, after it has already been appealed to this Court, is purely discretionary, the trial court's decision to refuse to rule on any matters concerning this case while it was on appeal was legally proper and does not provide evidence of bias. *See Abu-Jamal*, 720 A.2d at 90. Further, the fact that the trial court used only limited

citations and did not discuss certain evidence presented by Pien or her counsel in its 1925(a) opinion does not, in and of itself, establish evidence of "bias, prejudice, or unfairness necessitating recusal." *See Druce*, 848 A.2d at 108.

## Conclusion

Because Pien never indicated that she was unable to understand the complaint, never requested an interpreter to assist her in reading the complaint, and has not demonstrated that further delaying the grant of a permanent injunction would have enabled her to respond to the complaint, the trial court did not violate Pien's due process rights when it deemed the answers to the complaint admitted after the first hearing at which Pien appeared with an interpreter. Further, given that Pien had notice of the violations for over a year before the trial court granted the permanent injunction, the trial court did not violate her due process rights by imposing an 11-day deadline, after the final hearing, to remedy the violations and by not conducting another hearing to monitor compliance with its order. Finally, the trial court had subject matter jurisdiction and Pien has not demonstrated that the trial judge was biased or prejudiced such that it necessitated her recusal. Accordingly, for the foregoing reasons, the trial court's December 31, 2018 order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia          :
                                  :   No.  1738 C.D. 2018
              v.             :
                                  :
Shih Tai Pien,          :
              Appellant    :

## ***ORDER***

AND NOW, this 20th day of December, 2019, the December 31, 2018 order of the Court of Common Pleas of Philadelphia County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge